MARY BEASTALL, Ex'r of the Estate of Eleanor Bauer, Deceased, Plaintiff-Appellant, v. SCOTT MADSON, Defendant-Appellee.

Third District   No. 3—92—0054

Opinion filed October 6, 1992.

Douglas G. Griffin, of Miller, Hall & Triggs, of Peoria (William R. Kohlhase, of counsel), for appellant.

Stephen R. Swofford and David E. Jones, both of Hinshaw & Culbertson, of Chicago (Bruce L. Carmen, of counsel), for appellee.

JUSTICE HAASE delivered the opinion of the court:

Eleanor Bauer died approximately one year after her husband, Frederick Bauer. The executor of Eleanor Bauer's estate, Mary Beastall, brought the present legal malpractice action against the defendant, Scott Madson, claiming that Madson negligently failed to take action to protect Eleanor Bauer's interest in her deceased husband's estate. Specifically, Beastall claims that Madson failed to advise Eleanor Bauer to renounce Frederick Bauer's will and failed to take action to set aside an antenuptial agreement and *inter vivos* trust which disposed of the bulk of Frederick Bauer's estate. The defendant filed a motion to dismiss the complaint for failure to state a cause of action. The trial court granted the defendant's motion and ruled (1) that Beastall lacked standing to bring the present action; and (2) that even if Beastall did have standing, the plaintiff failed to show a likelihood that Eleanor Bauer would have prevailed in setting aside the trust and antenuptial agreement. In response, the plaintiff sought

leave to file an amended complaint. The trial court denied plaintiff's motion to file an amended complaint. The plaintiff appeals.

Eleanor Bauer married Frederick Bauer in April of 1969. Shortly before the couple married, they executed an antenuptial agreement waiving any interest each may have possessed in the other's property. In March of 1986, Frederick Bauer transferred substantially all of his assets to a revocable trust under which he was named as trustee. Shortly after Frederick Bauer's death in September of 1987, his widow employed attorney Scott Madson to represent her in connection with her rights arising out of the death of Frederick Bauer. Madson filed suit to set aside the trust and antenuptial agreement. Madson also filed a petition to perpetuate the testimony of Eleanor Bauer. In this petition, Madson alleged that the reason Bauer wished to perpetuate her testimony was that she was in failing health "and there is no reasonable assurance she will be alive to testify at any trial in this cause." Bauer died on November 13, 1988, prior to her giving an evidence deposition or any other sworn testimony. Madson also had not filed a petition to set aside the will of Frederick Bauer at the time of Eleanor Bauer's death.

The executor of Bauer's estate, Mary Beastall, brought the present legal malpractice action against attorney Madson. In her suit, the plaintiff alleges that Madson failed to advise Eleanor Bauer she could renounce Frederick Bauer's will; failed to take appropriate action to set aside the antenuptial and trust instruments; and failed to preserve the testimony of Eleanor Bauer.

Beastall claims that had the defendant diligently prosecuted the claims of Eleanor Bauer, Eleanor Bauer or her personal representative would have obtained a judgment setting aside the antenuptial agreement and the trust.

The trial court ruled that in order for the plaintiff to maintain her malpractice action she must demonstrate that there is a likelihood that Eleanor Bauer would have prevailed in setting aside that trust. The court noted that the plaintiff's complaint is devoid of specific factual allegations supporting her contentions. The court noted that mere assertions or conclusions of law contained in a complaint are not sufficient to support a claim of legal malpractice. The court ruled that the fact that the antenuptial agreement of 1969 and the deed in trust in 1986 were both signed by Eleanor Bauer, plus the fact that both Bauers are now deceased, makes such a showing unlikely. The court then granted the defendant's motion to dismiss. In response, the plaintiff sought leave to file an amended complaint. The trial court denied the plaintiff's motion and the plaintiff now appeals.

We must now determine (1) whether the trial court erred in ruling that the plaintiff lacks standing to bring the present action; (2) whether the trial court erred in dismissing her complaint for failure to state a cause of action; and (3) whether the trial court erred in failing to allow the plaintiff leave to file an amended complaint.

Citing *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, the trial court ruled that the plaintiff lacked standing to bring the present action. The court ruled that there was no evidence that Mary Beastall was an intended beneficiary of the attorney-client relationship between attorney Madson and Eleanor Bauer. The defendant also claimed that the plaintiff lacked standing because legal malpractice actions are nonassignable. The court specifically declined to rule on this point. On appeal, the defendant argues both standing theories. A careful review of these contentions, however, reveals that neither is correct.

In *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, the plaintiffs brought a legal malpractice action against the defendant, Ronald Griesheimer. Griesheimer had represented Loretta Ray, the plaintiffs' mother, in a divorce proceeding against George Ray, the plaintiffs' father. The divorce decree contained a provision requiring George Ray to maintain the plaintiffs as the primary beneficiaries of his life insurance policy. Ray subsequently remarried and named his second wife as the primary beneficiary. When Ray died, the second wife received the proceeds of the insurance policy. The plaintiffs then filed a malpractice action against the defendant. The defendant filed a motion to dismiss claiming that the plaintiffs lacked standing to bring the action. The trial court agreed and dismissed the plaintiffs' case. The Illinois Supreme Court affirmed. The court noted that the attorney-client relationship was between Loretta Ray and the defendant. The high court ruled that in order for a nonclient to succeed in a malpractice action against an attorney, "he must prove that the primary purpose and intent of the attorney-client relationship was to benefit or influence the third party." (*Pelham*, 92 Ill. 2d at 21.) The court held that since the plaintiffs were not the intended beneficiaries of the attorney-client relationship between their mother and the defendant, they lacked standing to sue.

■ In the case at bar, the plaintiff has not claimed that she was a third-party beneficiary of the attorney-client relationship between Eleanor Bauer and the defendant. Instead, the plaintiff has brought the present action in her capacity as the executor of Eleanor Bauer's estate. Clearly, in that capacity an attorney-client relationship existed between plaintiff, as executor, and attorney, Scott Madson. As such, the doctrine announced in *Pelham* is inapplicable to the case at bar.

Instead, we must determine whether a legal malpractice action survives the death of the client. The defendant concedes that a plaintiff's cause of action for professional malpractice "technically survives under the Survival Act" (Ill. Rev. Stat. 1987, ch. 110½, par. 27—6), but asserts that unless the action was *filed* by the client prior to the time of the death of either the client or the attorney, the plaintiff has no standing to sue. Although interesting, this contention is without legal merit.

In *Jones v. Siesennop* (1977), 55 Ill. App. 3d 1037, 371 N.E.2d 892, the court ruled that an action for professional malpractice does not abate with the death of the plaintiff. Likewise, in *McGill v. Lazzaro* (1978), 62 Ill. App. 3d 151, 379 N.E.2d 16, the court ruled that an action for professional malpractice does not abate with the death of the defendant attorney. In the case at bar, the defendant asks this court to distinguish *Jones* and *McGill*. According to the defendant, an action for professional malpractice can only survive if the action was filed prior to the death of the client. We disagree. In *Jones*, the court ruled that an action for professional malpractice is considered "personal property" within the meaning of the Survival Act. (*Jones*, 55 Ill. App. 3d at 1041.) As such, the action survives and any factual distinction between that case and the one at bar is inconsequential.

Having determined that the plaintiff has standing to bring the present action, we now turn to the merits of her claim. The plaintiff claims that the trial court erred in dismissing her original complaint. We disagree.

In support of her allegation that diligent prosecution of Bauer's claim would have resulted in the trust being set aside, the plaintiff alleged:

> "The Trust was, in actuality, a sham transaction, essentially testamentary in character, and a fraud upon the marital rights of Eleanor Bauer."

The trial court ruled that the plaintiff failed to provide specific factual allegations in support of her contention that the trust was a "fraud upon the marital rights of Eleanor Bauer." The court ruled that in order for the plaintiff to maintain her action, "there must be a showing that Eleanor Bauer would have prevailed in setting aside that trust." The plaintiff argues the trial court erred on this point. A review of applicable case law reveals the plaintiff is mistaken.

In *Sheppard v. Kroll* (1991), 218 Ill. App. 3d 254, 578 N.E.2d 212, the court dealt with a situation similar to the one at bar. In *Sheppard*, the plaintiff was injured when he was struck at work by a forklift. It was the plaintiff's belief that the forklift had a defective transmission

and that the vehicle slipped into gear as he was walking past. The plaintiff hired the defendant attorney to prosecute his workman's compensation claim and institute a products liability action. The plaintiff alleged that the defendant attorney, however, failed to take steps to preserve the forklift, failed to take steps to identify the make and model of the forklift, and failed to employ a mechanical engineer or other expert to inspect the forklift. As a result, the plaintiff alleged that the forklift had been "destroyed, sold or otherwise disposed of by Jay's Foods, Inc.," and that it was now "impossible to ascertain the make, manufacturer, seller, or mechanical condition of the forklift that was involved in plaintiff's injury." 218 Ill. App. 3d at 256.

In response, the defendant moved to dismiss the plaintiff's complaint contending that the plaintiff could not succeed in the malpractice action because he could not plead and could not prove he would have prevailed in a products liability action. The trial court agreed and granted the defendant's motion and dismissed the plaintiff's suit. The plaintiff appealed.

On review the court noted that in any legal malpractice action, a plaintiff must plead the existence of a valid underlying cause of action. (*Claire Associates v. Pontikes* (1986), 151 Ill. App. 3d 116, 502 N.E.2d 1186.) Four elements must be alleged and proven: (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission that breached that duty; (3) proximate cause that establishes that but for the attorney's negligence, plaintiff would not have suffered an injury; and (4) damages. *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96.

Because a plaintiff must establish that but for the attorney's negligence he would have been successful in the underlying action, plaintiff is essentially required to prove a case within a case, specifically, establishing a *prima facie* product liability case and then proving it in order to prove the legal malpractice case. (*Cook v. Gould* (1982), 109 Ill. App. 3d 311, 314, 440 N.E.2d 448.) This is required because of the damages element of the action; no malpractice exists unless counsel's negligence has resulted in the loss of an underlying action. *Claire Associates*, 151 Ill. App. 3d at 122.

Therefore, we must consider whether plaintiff's legal malpractice complaint alleged the facts to establish she not only had a valid cause of action, but that she would have been successful in that cause. The court in *Sheppard* ruled that because the plaintiff could not allege facts which could support a finding that he would have been successful in his products liability action, the trial court did not err in dismissing his malpractice action.

■ In the case at bar we are faced with a similar situation. The plaintiff alleges that had the defendant diligently prosecuted the claim of Eleanor Bauer, she could have set aside the Frederick Bauer trust. In *Johnson v. LaGrange State Bank* (1978), 73 Ill. 2d 342, 383 N.E.2d 185, the Illinois Supreme Court explained that in order to set aside a valid *inter vivos* trust, it is not enough to show that the surviving spouse was deprived of his or her statutory share in the assets transferred. Instead, the contesting party must show that the trust transaction lacked donative intent which was tantamount to a fraud on the marital rights of the surviving spouse.

> "We conclude that an *inter vivos* transfer of property is valid as against the marital rights of the surviving spouse unless the transaction is tantamount to a fraud as manifested by the absence of donative intent to make a conveyance of a present interest in the property conveyed." 73 Ill. 2d at 361.

The court explained that in order to set aside the trust, it is not enough to show that the settlor has named himself trustee and retained indicia of ownership and control. (*Farkas v. Williams* (1955), 5 Ill. 2d 417.) Instead, the intent to defraud is found when the transferor in reality had no intent to convey any present interest in the property but, in fact, intended to retain complete ownership. *Johnson*, 73 Ill. 2d at 359.

In this case, the plaintiff failed to allege in her original complaint that Frederick Bauer retained complete ownership and control over the assets he transferred to the trust. The court correctly dismissed the complaint.

■ In her amended complaint, however, the plaintiff has made the proper allegations. Although the fact that both Eleanor and Frederick Bauer are now deceased casts doubt upon the plaintiff's ability to prove the allegations of her amended complaint, we are of the opinion she should be afforded an opportunity to do so.

In *Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 586 N.E.2d 1211, the court noted that there are four factors which must be evaluated to determine whether a trial court has abused its discretion in denying leave to file amended pleadings. These factors are: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified. *Loyola Academy*, 146 Ill. 2d at 273.

A review of the record before this court reveals that the plaintiff's motion satisfies all four elements articulated above. First, the proffered pleadings, if proven, could form a basis for a judgment in plaintiff's favor. The amended pleadings allege that Frederick Bauer never actually transferred ownership of the subject property to the trust and that he treated the property as if it were his own. Of course if the subject property was never actually transferred to the trust, the trust could not shield the assets of Frederick Bauer. Second, the defendant would not suffer prejudice or surprise if the amended pleading were allowed. The plaintiff is not seeking to add a new and divergent cause of action to her complaint. She is simply seeking to amend her complaint by adding more specific factual allegations. Third, the proffered amendment was brought fairly early on in the stage of this litigation. If plaintiff had sought to add a new theory of recovery after discovery had been completed and the case was ready for trial, we might have a different view of the proffered amendment. Finally, the plaintiff had not sought any prior amendments. Although the plaintiff did not have an absolute right to amend her complaint, trial courts should generally take a deferential view of such motions when brought early on in the litigation process.

In conclusion, we find the trial court erred in not allowing the plaintiff the opportunity to file her amended complaint. The trial court obviously did so because the court had serious doubts about the plaintiff's ability to produce admissible evidence in support of her allegations. In light of the fact both Frederick and Eleanor Bauer are now deceased, we share the court's concerns. If upon remand the plaintiff is unable to produce admissible evidence to support her allegations, the trial court will take the appropriate action. However, it is the view of this court that a party alleging a cause of action should be afforded the opportunity to present her proofs. If allegations are made and the proofs are insufficient to meet her burden, the trial court should grant a motion for a directed verdict.

The judgment of the circuit court of Bureau County is reversed.

Reversed.

SLATER and STOUDER, JJ., concur.